IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA STAHLNECKER | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 08-CV-0681 |
| SEARS | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                                                                    March 9, 2009

Before the Court are the Defendant's Motion for Summary Judgment, (Doc. No. 14), and Motion to Strike (Doc. No. 17). The Motion to Strike must be disposed of before the Motion for Summary Judgment as it seeks the preclusion of evidence relied on by the Plaintiff in her response to the Motion for Summary Judgment. This case involves allegations of age, sex, and disability discrimination. For the reasons that follow, the Court will deny the Motion to Strike (Doc. No. 17) and grant the Motion for Summary Judgment (Doc. No. 14).

**I.     MOTION TO STRIKE (DOC. NO. 17)**

In its Motion to Strike, the Defendant, Sears ("Sears"), moves the Court to strike any reference to an Unemployment Compensation Board of Review hearing transcript, (the "transcript"), in the Plaintiff's response to Sears' Motion for Summary Judgment. (Mot. 1-2.) Sears alleges that the Plaintiff, Barbara Stahlnecker ("Stahlnecker"), did not produce a copy of the transcript during discovery and only disclosed its existence by citing to it in her response to Sears' Motion for Summary Judgment. (Id.) Sears further alleges that Stahlnecker failed to serve the transcript on Sears when she served her response to Sears' Motion for Summary

Judgment. (Id.) Sears was forced to request the transcript by letter. (Id.) Sears contends that Stahlnecker's actions amount to (1) a failure to make initial disclosures or to supplement discovery responses in violation of Rule 26(e) of the Federal Rules of Civil Procedure and (2) a failure to serve pleadings and other papers in violation of Rule 5 of the Federal Rules of Civil Procedure.

In response to the Motion to Strike, Stahlnecker contends that the transcript is admissible and references to it should not be struck. (Resp. II.)[1] This contention is clearly non-responsive. Stahlnecker does not deny that the transcript was responsive to Sears' discovery requests, that she failed to turn the transcript over in discovery, or that she failed to serve it on Sears along with her response to Sears' Motion for Summary Judgement even though she made numerous references to it in her response. Further, Stahlnecker does not provide any justification for her failure to turn the transcript over in discovery or to serve Sears with a copy the transcript.

After reviewing the transcript and Sears' discovery requests, the Court finds that the transcript is precisely the type of document that Sears sought in its request for production of documents. See (Doc. No. 17 Ex. 2 ¶¶ 2, 7, 16, 50). As a result, Stahlnecker was obligated to disclose its existence to Sears. Having concluded that the transcript was covered by Sears' discovery requests and not disclosed by Sears, the Court must now consider whether to exclude the transcript under Rule 37(c) of the Federal Rules of Civil Procedure, as Sears moves the Court

---

[1] The pages of Stahlnecker's response to Sears' Motion to Strike are not numbered. "II" represents the section of the Response.

to do.² When doing so, the Court is guided by four considerations: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000); Gagnon v. Lemoyne Sleeper Co., Inc., No. 05-2081, 2008 WL 5061684, *1 (M.D. Pa. Nov. 28, 2008) (quoting Nicholas for the same proposition).

As to the prejudice consideration, the Court finds that any prejudice inflicted on Sears was cured by the Court's granting Sears leave to reply to Stahlnecker's response to Sears' Motion for Summary Judgment after Sears received a copy of the transcript. Sears has not articulated any other prejudice that it suffered as a result of Stahlnecker's failure to produce the transcript during discovery. There has been no contention by Sears that a timely disclosure of the transcript would have altered the course of discovery or changed the trajectory of this case. The Court further finds that no significant disruption resulted from Stahlnecker's actions. Finally, though the Court is troubled by Stahlnecker's conduct during discovery and her non-responsive filing in response to Sears' Motion to Strike, the Court cannot attribute any bad faith or willfulness

---

² Sears does not provide any authority for striking references to the transcript based on Stahlnecker's failure to serve a copy of the transcript in violation of Rule 5 of the Federal Rules of Civil Procedure. Thus, the Court will only consider whether references to the transcript should be struck for Stahlnecker's violation of Rule 26(e) of the Federal Rules of Civil Procedure.

Stahlnecker's part.  Thus, the Court will deny Sears' Motion to Strike (Doc. No. 17).

## II.	MOTION FOR SUMMARY JUDGMENT (DOC. NO. 14)

As stated above, this case involves allegations of age, sex, and disability discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, Title VII, 42 U.S.C. §§ 2000e to 2000e-17, the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.  Stahlnecker sued Sears in state court.  The action was removed to federal court.  Sears filed a Motion for Summary Judgment as to each count of the Complaint.

### BACKGROUND

Stahlnecker began working for Sears in 1974.  (Compl. ¶ 3.)[3]  Most recently, she worked as a sales associate in the washer and dryer department.  (Id. ¶¶ 4, 8.)  Stahlnecker suffers from debilitating knee problems.  (Id. ¶ 21.)   Her knee problems forced her to seek an accommodation from Sears during her employment.  (Id. ¶ 21.)  On December 21, 2006, Sears terminated Stahlnecker's employment.  (Id. ¶ 16.)  Stahlnecker was told that she was effectively retired and could not be rehired into the same position.  (Id.)  Stahlnecker was 58 years old.  (Id. ¶ 33.)  Stahlnecker believes that her age, sex, and disability were motivating factors in the termination of her employment with Sears.  (Id. ¶¶ 20, 33-37, 40-43, 46-48, 51-67, 70.)  Sears counters that Stahlnecker was not terminated based on an any illegal criterion.  (Br. 8.)  Rather, Sears contends that Stahlnecker was fired for twice violating company policy by forcing through two credit transactions on behalf of customers who did not have sufficient credit to cover their purchases.

---

[3] The Complaint is attached to the Notice of Removal as an exhibit (Doc. No. 1) .

(Br. 21-24.)  These violations resulted in $5,571.00 worth of "charge backs"[4] to Sears.  (Br. 22.)

## STANDARD OF REVIEW

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  It is not the role of the trial judge "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial," id. at 250, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Id. at 255.  At "the summary judgment stage, in other words, 'all that is required [for a non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth.'"  Jackson v. Univ. of Pittsburgh, 846 F.2d 230, 233 (3d Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

---

[4] A "charge back" in this context, refers to a loss that Sears incurs when an employee authorizes and completes a transaction on behalf of a customer who lacks sufficient credit to cover the cost of the transaction.  See (Pl. App'x (Doc. No. 16) Ex. B 6-7).

## ANALYSIS

Stahlnecker concedes that her case is based on circumstantial evidence only and should be analyzed under a pretext theory. (Resp. II.A., II.F., II.G.)[5]  The Court agrees and will analyze her ADEA,[6] Title VII, and ADA claims[7] using the familiar three-step, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 492 (1973).  Under the McDonnell Douglas framework, Stahlnecker must establish a prima facie case of discrimination as to each of her claims.  The prima facie cases will create rebuttable presumptions of discrimination and shift the burden of production to Sears to articulate a legitimate, nondiscriminatory reason for terminating Stahlnecker's employment.  A legitimate, nondiscriminatory reason for the termination will rebut the presumptions of discrimination created by the prima facie cases.  If Sears can offer such a reason, the burden shifts back to Stahlnecker to show that Sears' reason is merely pretext for discrimination.  "This showing must be such that a 'factfinder could

---

[5] As with her response to Sears' Motion to Strike, Stahlnecker's response to Sears' Motion for Summary Judgment is not numbered so the Court will refer to the response's sections.

[6] Stahlnecker concedes that she has no evidence to advance a claim of age discrimination under a disparate impact theory, which is count two of her Complaint. (Resp. II.F.)  Therefore, the Court will grant Sears' Motion for Summary Judgment as to count two without any further analysis.

[7] The Court will omit an analysis under the PHRA, Stahlnecker's count five, because the PHRA is construed consistently with Title VII, ADEA, and ADA.  See Atkinson v. Lafayette College, 460 F.2d 447, 453-454 (3d Cir. 2006) (construing Title VII and PHRA consistently with each other); Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005) (analyzing simultaneously a claim under the ADEA and the "analogous provisions" of the PHRA); Kelly v. Drexel, 94 F.3d 102, 105 (3d Cir. 1996) (interpreting PHRA in accord with ADA).

reasonably either (1) disbelieve [Sears'] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Sears'] action.'" Hunter v. Rowan Univ., No. 07-2300, 2008 WL 4874469, *2 (3d Cir. Nov. 12, 2008) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). "In conducting our analysis, we must be aware that 'federal courts are not arbitral boards ruling on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.'" Hunter, 2008 WL 4874469, *2 (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (quotations omitted)).

### A.     Stahlnecker's Prima Facie Cases of Discrimination

In order to establish a prima facie case of discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). For ADEA and Title VII cases, a protected plaintiff who is qualified for her job may establish a prima facie case by showing that she was fired and replaced by a person who is not a member of her protected class, including someone who is sufficiently younger, see Hunter, 2008 WL 4874469, *4, or a member of the opposite sex, see Tenthoff v. McGraw-Hill,Inc., 808 F. Supp. 403, 406 (E.D. Pa. 1992).

In ADA cases, a plaintiff who is qualified for her job and meets the statutory definition of disabled under the ADA can also establish her prima facie case by showing that she was fired

and replaced by someone who is not a member of her protected class, namely someone who does not meet the statutory definition of disabled under the ADA.  See Latch v. Se. Pa. Transp. Auth., 984 F.3d 317, 320 (E.D. Pa. 1997) (setting forth the prima facie elements of a discrimination claim under the ADA and the analogous provision of the PHRA).  Additionally, an ADA plaintiff who is qualified for her job and meets the statutory definition of disabled under the ADA can also establish a prima facie case by establishing that her employer failed to engage in an interactive, good faith process to accommodate her disability.  See Boice v. Se. Pa. Transp. Auth., No. 05-4772, 2007 WL 2916188, *13-16 (E.D. Pa. Oct. 5, 2007) (noting that a failure to accommodate is an adverse employment action under circumstances that could give rise to an inference of intentional discrimination).

  Here, Stahlnecker can easily establish prima facie cases under Title VII and the ADEA.  By virtue of her age at the time of her termination, 58, and her sex, female, she is protected under both statutes.  Sears does not dispute that she was qualified for her job.  In fact, she was described as an "outstanding employee" by her store manager.  See (Pl. App'x (Doc. No. 16) Ex. B 12).  Nor does Sears dispute that Stahlnecker was fired and replaced by a male employee in his forties.  (Resp. I.A., II.C.1., II.F.); see O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*.").  As a result, Stahlnecker has created rebuttable presumptions that she was discriminated against based on her age and sex.

  Stahlnecker's prima facie case under the ADA is not as clear because she appears to be

alleging two separate theories of disability discrimination, which are based on different operative facts. The first theory is based on the fact that Stahlnecker was fired and replaced by someone outside of her protected class, namely someone who does not meet the statutory definition of disabled under the ADA.[8] Indeed, those facts are sufficient to create a rebuttable presumption of discrimination because Sears does not dispute that Stahlnecker is protected by the ADA by virtue of her knee condition or that she was qualified for her former job.

The second theory is based on Stahlnecker's allegations that Sears failed to accommodate her disability,[9] which itself is actionable under the ADA. In order to establish a prima facie case for failure to accommodate or "participate in the interactive process, a disabled employee must demonstrate that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have

---

[8] Paragraph 12 of Stahlnecker's Complaint alleges that "she was specifically harassed and then terminated by the Defendant because of her disability." (Compl. ¶ 12.) Paragraph 64 alleges that "the Defendant has discriminated against her because of her disability." (Id. ¶ 65.)

[9] The following allegations in Stahlnecker's Complaint were read by the Court to constitute a failure to accommodate claim.
"[T]he Defendant did not engage in any interactive process, because it never bothered to continue to work with the Plaintiff and her physician to determine a long-range strategy to utilize existing company benefits to enable the plaintiff to return to work on either a full-time or part-time basis." (Compl. ¶ 10.)
"[T]he Defendant's only desire to [sic] was to terminate her to avoid having to continue to work with her in the future and to avoid possibly having to grant the additional accommodations in the future." (Id. ¶ 11.)
"[I]t was generally known that management for the Defendant was unhappy with the fact that the Plaintiff was given the aforementioned accommodation." (Id. ¶ 23.)
"[T]he Defendant refused to continue to grant the Plaintiff a reasonable accommodation within the meaning set forth in the [ADA]." (Id. ¶ 64.)

been reasonably accommodated but for the employer's lack of good faith." Parker v. Verizon Pa., Inc., No. 07-4829, 2009 WL 255663, *8-9 (3d Cir. Feb. 4, 2009) (quotations and citations omitted).

There is no evidence that Sears failed to engage in a good faith, interactive process to accommodate Stahlnecker's disability. In fact, the record supports the contrary. From Stahlnecker's testimony alone, it is clear that Sears acted in good faith regarding her accommodation. In her deposition, Stahlnecker stated that as early as 1994, when her knee problems began to limit her working activities, Sears provided her with a stool to use on the sales floor throughout the day at her own discretion. (Pl. Dep. 56, 59-60, 67, 70.) This accommodation lasted until her termination in December of 2006. (Pl. Dep. 69, 81.) Stahlnecker never asked for any other accommodation. (Pl. Dep. 74.) Further, the Court notes that when Stahlnecker was asked "do you think you were terminated because of your accommodation," she responded, "No." (Pl. Dep. 77.) Thus, Stahlnecker cannot advance her ADA claim on the premise that Sears failed to accommodate her disability because she lacks support for it. See Parker 2009 WL 255663, *8-9. This is not to say that the Court will not consider the circumstances surrounding Stahlnecker's accommodation, including the fact that Sears had notice of her disability and the comments that were allegedly made to her by other employees about her accommodation and disability. Rather, the Court is merely concluding that Stahlnecker has not established a rebuttable presumption of discrimination based on Sears' failure to accommodate her disability because the record demonstrates that Sears accommodated her disability in good faith.

B.     **Sears' Legitimate, Nondiscriminatory Reason**

Sears answers Stahlnecker's allegations of discrimination by referring to two violations of company policy attributable to Stahlnecker, which cost Sears' $5,571.00 in charge backs.[10] Specifically, following a two month investigation, Sears determined that two charge backs were attributable to Stahlnecker manually overriding and forcing two credit transactions on behalf of two customers who did not have sufficient credit to purchase items from Sears. (Br. 3-4.) This is the same reason that Sears gave during an Unemployment Compensation Board of Review hearing on February 12, 2007. (Pl. App'x (Doc. No. 16) Ex. B 4-5, 9). Manually overriding denials of credit transactions and forcing sales constitute violations of Sears' policy. (Pl. App'x Ex. B 5). Employees are made aware of the policy during each credit transaction through a splash screen that appears on their cash registers. (Pl. App'x Ex. B 5). It is well-settled that a violation of company policy, even an unintentional violation, is a legitimate, nondiscriminatory reason to terminate employment. See Dowling v. Citizens Bank, 295 F. App'x 499, 503 (3d Cir. 2008) ("[Defendant] need not show that [plaintiff] intentionally violated company policy in order to have a legitimate reason for firing her . . . [s]o long as [defendant's] decision was not motivated by discriminatory animus, we defer to it.") (citations omitted).

C.     **Pretext**

Since Sears has offered a legitimate, nondiscriminatory reason for terminating Stahlnecker's employment, it remains for Stahlnecker to either discredit the proffered reason or

---

[10] Sears and Stahlnecker agree that some of the money was recovered from one of the customers since Stahlnecker's employment was terminated. See (Resp. II.B.1.; Reply 3).

adduce evidence, circumstantially or directly, that discrimination was more likely than not a motivating factor or the determinative cause of her termination.  See Fasold v. Justice, 409 F.3d 178, 185 (3d Cir. 2005) (holding that employer's proffered reason was discredited).  When viewing the record and making all of the reasonable inferences therefrom in the light most favorable to Stahlnecker, the Court concludes that Stahlnecker can neither discredit Sears' proffered reason nor adduce any evidence that discrimination was more likely than not a motivating factor or the determinative cause of her termination.  First, the Court will consider Stahlnecker's attempt to discredit Sears' proffered reason.  Then, the Court will consider Stahlnecker's attempt to adduce evidence of discrimination as to her Title VII, ADEA, and ADA claims.

      Stahlnecker failed to discredit Sears' proffered reason.  Primarily, Stahlnecker's arguments and evidence go to the issue of whether she intentionally violated Sears' policy during the transactions in question.  Stahlnecker does not deny that she was involved in the transactions.  Nor does she attack the thoroughness of Sears' investigation.  Rather, Stahlnecker focuses on the issue of her state of mind at the time of the transactions.  For example, Stahlnecker submitted the transcript of her February 2007 Unemployment Compensation Board of Review hearing, where the sole issue was whether Stahlnecker's termination was the result of "working misconduct," and all of the testimony presented was done so with an eye towards establishing her willful violation of Sears' policy.  (Pl. App'x. Ex. B 1, 25-26.)[11]  In fact, during the hearing,

---

[11] Sears filed the appeal to the Unemployment Compensation Board of Review after Stahlnecker was determined to be eligible for benefits. (Pl. App'x Ex. B 1).  Neither party reported on the ultimate outcome of the hearing.

Stahlnecker's attorney even admitted that while Sears established that Stahlnecker made a mistake, it could not establish that the mistake was willful. (Pl. App'x Ex. B 25-26). Stahlnecker also submitted her own handwritten statements that were prepared around the time of her termination, in which she wrote "[a]s with all transactions, human error is indeed possible. I might have rushed through the sale faster than I should causing an error or unintentionally overlooked something." (Pl. App'x Ex 11 of Ex A)  Additionally, Stahlnecker continues to argue that the cash registers that were used during the transactions in question were "problematic, and that it could have been a system error."  (Compl. ¶ 18.)  However, Stahlnecker's state of mind at the time of the transactions is not at issue.  See Dowling, 295 F. App'x at 503.

Only Sears' belief relative to its proffered reason is relevant in a pretext inquiry.  See Sampath v. Immucor, Inc., 271 F. App'x 955, 960-61 (11th Cir. 2008) (granting summary judgment and noting that plaintiff's evidence that other employees were more culpable than she does not rebut employer's decision to fire her based on his belief that she was responsible for inaccurate or incomplete work); Fuentes, 32 F.3d at 765 ("[T]he factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent or competent.'"); Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) ("What matters is the perception of the decision maker."); Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1304 (7th Cir. 1991) (noting that the inquiry regarding genuineness of the nondiscriminatory reason "is limited to whether the employer's belief was honestly held"); Holder v. City of Raleigh, 867 F.2d 823, 829 (4th Cir. 1989) ("[A] reason honestly described but poorly founded is not a pretext."); Wilkins v. Eaton Corp., 790 F.2d 515, 521 (6th Cir. 1986)

("The ADEA did not change the fact that an employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory."); Braithwaite v. Accupac, Inc., No. 00-5405, 2002 WL 31928434, *6 (E.D. Pa. Dec. 30, 2002) ("That plaintiff may believe he was unfairly blamed for the deficiencies in his area does not establish pretext as it is the employer's belief that is important."); Hicks v. Arthur, 878 F. Supp. 737, 739 (E.D. Pa. 1995) ("[A]n ill-formed decision or an ill-considered decision is not automatically pretextual if the employer has given an honest explanation."), aff'd, 72 F.3d 122 (3d Cir. 1995).  Stahlnecker has not produced any evidence to discredit Sears' proffered reason or undermine its asserted belief that she was the employee responsible for the charge backs and violations of company policy.

Stahlnecker's attempts to adduce evidence of discrimination are also unpersuasive. Stahlnecker's Title VII claim is based on her allegations that male employees were treated better than she by the store manager responsible for her termination.  (Pl. Dep. 106; Resp. I.A.)  In support, she argues that she was "subjected to a hyper-technical and exacting standard of discipline that was not imposed in like fashion upon her male co-workers."  (Resp. II.C.1.) While the Court acknowledges that "double standards" have been sufficient to establish pretext, see Waldron v. SL Industries, Inc., 56 F.3d 491, 499-500 (3d Cir. 1995), such an argument must be predicated on a factual showing that similarly-situated, non-protected employees were treated better or dealt with less harshly than the plaintiff.  See Howell v. PPL Serv. Corp., 232 F. App'x 111, 115 (3d Cir. 2007) (affirming grant of summary judgment where the plaintiff "failed to produce sufficient admissible evidence that similarly-situated employees outside a protected class were treated more favorably or more leniently than plaintiff for having committed substantially

similar offenses").

Stahlnecker did not know of anyone else who was accused of forcing sales in violation of company policy. (Pl. Dep. 107-09, 133.) Rather, her double-standards argument is based on the fact that male employees were not punished for offering free delivery and taking excessive markdowns. (Resp. II.C.1.) However, such a premise cannot support her conclusion that she was treated differently because Sears did not consider such infractions to be as serious as forcing sales. (Reply 10.) The rationale behind Sears' assertion is that while offering free delivery and marking items down are discretionary acts that can be ratified by a manager, forcing sales is simply prohibited. (Id.) Thus, because there are no facts upon which a double-standards argument could be made, the Court must reject the argument. Finally, when asked directly during her deposition whether sex discrimination had anything to do with her termination, Stahlnecker said, "No." (Pl. Dep. 134-35.) The only evidence that Stahlnecker can offer in support of her claim is that she was replaced by a male employee. In other words, Stahlnecker has offered nothing more than her prima facie case. Thus, summary judgment is proper as to Stahlnecker's Title VII claim and her sex-based PHRA claim.

Stahlnecker's ADEA claim is similar to her Title VII claim. It too is based largely on Stahlnecker's bare allegations that unprotected employees, i.e. younger employees, were treated better or less harshly. (Pl. Dep. 85.) This claims fails for the same reason that the Title VII claim fails, that is, Stahlnecker cannot show that a similarly-situated employee in an unprotected class was treated better or less harshly.

There is one additional piece of evidence that Stahlnecker offers to prove her ADEA

claim.  She alleges that in the summer of 2006 the store manager who was responsible for her termination told all of his staff on the sales floor that "even though he was new to the company he had no problem firing people, especially if – even if they were here 30 years."  (Pl. Dep. 41.) When evaluating comments for their probative value, the Court must consider "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement."  Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997); see also Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1112 (3d Cir. 1997).  However, the Court must also keep in mind that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Fuentes, 32 F.3d at 767 (quotations omitted). Here, although the comment was made by the manager who ultimately fired Stahlnecker, the comment was remote in time.  Further, it was not related to the decision-making process regarding Stahlnecker's termination.  The Court concludes that the comment is not particularly probative of age-based animus.  As a result, Stahlnecker has failed to offer any evidence beyond her prima facie case of age discrimination. Thus, summary judgment is appropriate as to her ADEA claim and her age-based PHRA claim.

   Summary judgment is also appropriate as to Stahlnecker's ADA claim and disability-based PHRA claim.  As stated above, the only aspect of Stahlnecker's ADA claim that has

reached the pretext stage is her allegation that she was terminated because of her disability.[12] The facts that support this claim include the fact that Stahlnecker was replaced by an employee who is not disabled. Stahlnecker also alleges that she found her stool, which Sears provided to her as an accommodation, in the trash bin several times, that she was once told to sit in the back of her department, though she was never forced to, and that she was once asked, sarcastically, whether she would be more comfortable in a wheelchair. (Pl. Dep. 68-69, 71, 85.) Stahlnecker further alleges that "it was embarrassing to [Sears] that [she] sat down" and that "they weren't happy about it." (Pl. Dep. 71-73, 79.) Finally, she also alleges that "they harassed me because of my disability, and it was easier to just say we're retiring you rather to than to continue having to worry about it." (Pl. Dep. 76.)

The incidents involving her stool in the trash bin have little probative value because Stahlnecker cannot establish a nexus between the incidents and her termination. Stahlnecker does not say who put the stool in the trash bin or when she found it in there. As to the comments about sitting in the back of the department and her use of a wheelchair, keeping in mind the factors set forth above regarding comments in the workplace, the Court finds that they lack probative value. Although the remarks were allegedly made by a manager, it was not the

---

[12] Paragraph 12 of Stahlnecker's Complaint alleges that "she was specifically harassed and then terminated by the Defendant because of her disability." (Compl. ¶ 12.) Paragraph 64 alleges that "the Defendant has discriminated against her because of her disability." (Id. ¶ 65.) The allegations contained in these paragraphs stand in contrast to her allegations that Sears failed to accommodate her disability. Although the Court will consider Stahlnecker's allegation that Sears failed to accommodate her in the context of Stahlnecker's disability discrimination claim, it will not recognize a failure to accommodate claim standing on its own for the reasons discussed in Part II.A.

manager who fired Stahlnecker.  Further, Stahlnecker does not reveal when these statements were made.  As to Stahlnecker's allegations that Sears was not happy about having to accommodate her and her assertion that it was easier for Sears to retire her, the Court is not obliged to credit such bare allegations without any evidentiary support and manufacture a triable issue of fact.  See Hicks v. Arthur, 878 F. Supp. 2d  737, 740  (E.D. Pa. 1995) (granting summary judgment on disparate treatment claim where plaintiff failed to present any evidence other than her own deposition testimony).  Stahlnecker does not attribute any of her allegations about Sears' feelings towards her to any particular actor.  Nor does she tie her allegations to any specific time or event.  Because Stahlnecker has failed to adduce any evidence that disability discrimination was the determinative cause or even a motivating factor in her termination, summary judgment is appropriate as to Stahlnecker's ADA claim and her disability-based PHRA claim.  The Court's conclusion is further buttressed by Stahlnecker's own admission during her deposition.  When asked "do you believe that Sears terminated you because of your disability," Stahlnecker responded, "Not specifically, no."  (Pl. Dep. 76.)

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA STAHLNECKER, | : | |
| Plaintiff | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 08-CV-0681 |
| SEARS, | : | |
| Defendant | : | |

**ORDER**

AND NOW, this 9th day of March, 2009, it is hereby ORDERED that Defendant's Motion to Strike (Doc. No. 17) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED.

Judgment is entered on behalf of the Defendant and against the Plaintiff.

The Clerk is ORDERED to mark this case closed for statistical purposes.

BY THE COURT:

*/s/ Thomas M. Golden*
THOMAS M. GOLDEN, J.